IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ZARS, INC., a Utah Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>LTS LOHMANN THERAPY SYSTEMS CORPORATION, a Delaware Corporation; and LTS LOHMANN THERAPIE-SYSTEME AG, a German Corporation,<br><br>    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:05-CV-198 TC |

In this breach of contract and declaratory judgment action, Defendants LTS Lohmann Therapy Systems Corporation (LTS New Jersey) and LTS Lohmann Therapie-Systeme AG (LTS Germany) seek an order compelling arbitration of their disagreement with Plaintiff ZARS, Inc. The Defendants base their motion to compel arbitration on a clause contained in a 2001 Memorandum of Understanding (MOU) concerning the potential joint development, manufacture, and sale of a self-adhesive fentanyl (pain reliever) patch. They contend that the arbitration clause mandates arbitration of the claims alleged in ZARS' Complaint. The court agrees. Accordingly, the Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Arbitration is GRANTED.[1]

---

[1] The Defendants move in the alternative to dismiss claims for lack of subject matter jurisdiction and for failure to state a claim. Because the court's ruling on the arbitration issue is dispositive, the court does not address the Defendants' proposed grounds for dismissal.

**BACKGROUND**

LTS Germany, a German corporation, produces drug delivery medical devices. LTS New Jersey, incorporated under the laws of New Jersey, is a wholly-owned subsidiary of LTS Germany. During the events relevant to this litigation, LTS New Jersey operated a manufacturing facility for the production of medical devices. ZARS, a Utah corporation, develops and licenses technologies related to non-invasive dermal administration of pharmaceuticals, particularly in conjunction with controlled heat.

In 1999, and then in 2001, the three entities entered into agreements relating to the potential joint development, manufacture, and sale of a self-adhesive fentanyl (pain reliever) patch. One of those agreements was the May 1999 Secrecy Agreement between ZARS and LTS New Jersey. LTS Germany was not a party to the Secrecy Agreement. The other agreement was the August 2001 Memorandum of Understanding (MOU) between ZARS and LTS Germany. LTS New Jersey was not a party to the MOU.

The MOU, which is governed by German law, reflects the signatories' objective to negotiate and execute a product development and license agreement. It memorialized the contractual rights and obligations of ZARS and LTS Germany during negotiations, and it contains the arbitration clause at issue here,[2] which reads in relevant part as follows:

> The parties shall attempt in good faith to resolve promptly <u>any dispute arising out of or relating to this Memorandum of Understanding or any subsequent agreement by negotiation.</u> If the matter cannot be resolved in the normal course of business, any interested party <u>shall</u> give to the other party <u>written notice</u> of any such dispute not resolved, after which the dispute <u>shall</u> be referred to the principal executive officers of both parties or their designees who <u>shall</u> likewise attempt to resolve the

---

[2]The Secrecy Agreement does not contain an arbitration clause.

> dispute.  <u>If the dispute has not been resolved by negotiation within 45 (forty-five) days of the written notice, either party may submit such dispute for arbitration</u> under the Rules of Arbitration of the International Chamber of Commerce of Philadelphia, PA, before a panel of three arbitrators . . . .

(MOU ¶ 29 (emphasis added).)  In the next clause of the MOU, the parties waived "any right to demand a trial by jury." (<u>Id.</u> ¶ 30.)

In 2003, the parties' negotiations regarding a proposed Product Development and License Agreement broke down.  According to ZARS, during an October 29, 2003 meeting of representatives from ZARS, LTS Germany, and LTS New Jersey, "ZARS suggested pursuing the dispute resolution mechanism outlined in Section [29] of the MOU that contemplated the meeting of the respective CEOs of the companies in an attempt to resolve the issues." (Compl. ¶ 94.)  But, according to ZARS, the LTS New Jersey representative "stated their latest proposal represented all they were willing to do and that the terms were 'non-negotiable.'" (<u>Id.</u>)  Similarly, the LTS Germany representative said that the LTS Germany's "CEO was aware of the impasse and that LTS Germany had 'no room to give on anything.'" (<u>Id.</u> ¶ 95.)  ZARS further alleges that the LTS New Jersey and LTS Germany representatives "indicated that they did not believe it would be effective to engage the formal dispute resolution mechanism outlined in the MOU." (<u>Id.</u> ¶ 96.)

ZARS terminated its contractual relationship with LTS Germany, but the parties continued to disagree about continuing obligations under the MOU.  One of the disputes concerned a February 2003 patent application filed by LTS Germany, which, according to ZARS, raised concerns about joint invention rights.  Another dispute concerned royalties purportedly due after termination of the MOU.  In June 2004, an attorney for ZARS "met with LTS Germany

in an [unsuccessful] attempt to resolve the disputed issues between the parties." (Id. ¶ 102.)

On March 7, 2005, ZARS filed its complaint in this case. ZARS alleged that "[a]dverse claims to its technology, threats of infringement, and claims to future royalties, such as those asserted by LTS New Jersey and LTS Germany, threaten ZARS' ability to maintain its financial integrity in the near and long term." (Id. ¶ 109.) ZARS alleges six causes of action against LTS Germany and LTS New Jersey: (1) breach of the Secrecy Agreement; (2) breach of the MOU under German law; (3) violation of German Civil Code § 311 for failure to negotiate in good faith; (4) alter ego; (5) declaratory judgment regarding the MOU royalty provision; and (6) declaratory judgment regarding the LTS Germany patent application. In response to ZARS' Complaint, LTS Germany and LTS New Jersey filed their motion to stay and compel arbitration under Paragraph 29 of the MOU.

## ANALYSIS

The Federal Arbitration Act (FAA) requires a district court to stay judicial proceedings where a written agreement between the parties provides for arbitration of the dispute alleged in the Complaint.[3]

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[3]Although the MOU is governed by German law, the issue of whether the parties' dispute should be arbitrated is governed by federal law. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

9 U.S.C. § 3.  Both LTS Germany and LTS New Jersey have petitioned the court under Section 4 of the FAA for such an order from the court.  See 9 U.S.C. § 4 (allowing "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition the court for an order that arbitration proceed in accordance with terms of the agreement).

As a threshold matter, ZARS contended in its opposition memorandum that LTS New Jersey has no standing to petition the court for an order compelling arbitration because LTS New Jersey was not a party to the MOU.  ZARS further contended that the only situation in which LTS New Jersey would have standing would be if the court determines (or the Defendants concede) that LTS New Jersey is, in fact, an alter ego of LTS Germany.  This issue need not be addressed because, during the hearing, the parties stipulated that LTS New Jersey may seek an order compelling arbitration and, in turn, LTS New Jersey will be bound by any court-ordered arbitration.  Accordingly, the court's analysis of the MOU's arbitration provision includes LTS New Jersey.

The primary issue raised by the parties is whether the arbitration clause is mandatory or permissive.  ZARS contends that the clause is permissive because it contains the word "may" and because any other reading of the clause would nullify language in the MOU through which the parties waived their right to a jury trial.  The arbitration clause provides that "[i]f the dispute has not been resolved by negotiation within 45 (forty-five) days of the written notice, either party may submit such dispute for arbitration . . . ."  (MOU ¶ 29.)

The court reads the plain language of the MOU to mean that as soon as the arbitration remedy is invoked, arbitration is mandatory.  The existence of the word "may" does not by itself

5

render the clause permissive. The clause states that "either party" may refer the dispute for arbitration. It does not require that all parties agree to arbitration before that remedy is used. It does not allow a veto of the other party's choice. A better reading is that once a party submits the dispute for arbitration, the other party is bound to follow that course.

And case law supports the court's interpretation. Although there is no binding precedent directly on point, two cases addressing similarly crafted arbitration clauses are persuasive.

First, in Block 175 Corp. v. Fairmont Hotel Mgmt. Co., 648 F. Supp. 450 (D. Colo. 1986), the district court addressed a similar situation. The arbitration clause at issue in Block 175 read as follows: "'If any controversy, disagreement, or dispute should arise . . ., either party may serve upon the other a written notice stating that such party desires to have the controversy . . . reviewed by a board of three (3) arbitrators . . . .'" Id. at 451 (emphasis added). The court in Block 175 rejected an argument strikingly similar to the one raised by ZARS. "Plaintiff contends the presence of the word 'may' in the arbitration clause renders arbitration permissive and not mandatory. A common sense reading of the clause belies this contention. When either party elects to arbitrate and serves the proper notice, as was done here, then arbitration must ensue." 648 F. Supp. at 452.

Similarly, in Held v. Nat'l R.R. Passenger Corp., 101 F.R.D. 420 (D.D.C. 1984), the district court rejected the argument that the use of the word "may" necessarily means the clause is permissive. The court noted that if either party invokes the arbitration clause, then arbitration is required. The word "may" gave "either aggrieved party the option to 'require' arbitration.'" Id. at 424 (citing Deaton Truck Lines, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir. 1962)). In the same sense, the clause in the MOU is mandatory. See also Austin v. Owens-Brockway

Glass Container, Inc., 78 F.3d 875, 879 (4th Cir. 1996) ("If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include . . . the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration.").

      Also, contrary to ZARS's contention, such an interpretation does not negate the language waiving the parties' right to a jury trial. (See MOU ¶ 30.) The waiver language addresses alternative remedies the parties contemplated when they drafted the MOU. For example, if neither party chose arbitration, then the dispute would be handled in a court of law, in which case the jury trial language would be wholly relevant. Or if only a portion of the parties' dispute was referred to arbitration, the remaining portion would be heard by a court of law, with the trial judge acting as the finder of fact. Also, it is possible, even with a mandatory arbitration clause, that factual issues could come before the court. See, e.g., 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue . . . .").

      The court notes that the arbitration clause indisputably sets forth a mandatory dispute resolution process that was to precede any referral to arbitration. That process requires written notice and referral of the dispute to the parties' chief executives (or their designees) and a forty-five day negotiation period.

      But ZARS does not allege that the process was followed. Instead, ZARS unpersuasively suggests in its Complaint that LTS New Jersey and LTS Germany affirmatively waived that provision of the MOU. (See Compl. ¶¶ 94-96.) According to ZARS, it "suggested pursuing the

dispute resolution mechanism outlined in Section [29] of the MOU that contemplated the meeting of the respective CEOs of the companies in an attempt to resolve the issues." (Compl. ¶ 94.) But the LTS New Jersey representative "stated their latest proposal represented all they were willing to do and that the terms were 'non-negotiable.'" (Id.) And the LTS Germany representative said that the LTS Germany's "CEO was aware of the impasse and that LTS Germany had 'no room to give on anything.'" (Id. ¶ 95.) ZARS further alleges that the LTS New Jersey and LTS Germany representatives "indicated that they did not believe it would be effective to engage the formal dispute resolution mechanism outlined in the MOU." (Id. ¶ 96.) Even given ZARS' allegations, which are taken as true at this point, the court finds that ZARS failed to honor the agreed-upon procedure for dispute resolution. ZARS unfairly preempted LTS Germany's contractual right to invoke the remedy of arbitration, and so the court honors LTS Germany's request for arbitration.

Finally, the parties apparently do not dispute that, if the court compels arbitration, the entire case should be stayed. And policy underlying the FAA also supports the conclusion that the entire case should be stayed pending arbitration. "'There is a strong federal policy favoring arbitration for dispute resolution.' . . . The policy basis of [the FAA] is particularly strong in the context of international transactions. . . . All 'doubts are to be resolved in favor of arbitrability.'" Coors Brewing Co. v. Molsen Breweries, 51 F.3d 1511, 1514 (10th Cir. 1995) (internal citations omitted); see also AT&T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) ("where the contract contains an arbitration clause, there is a presumption of

arbitrability . . . . 'Doubts should be resolved in favor of coverage.'") (internal citation omitted).[4]

**ORDER**

For the foregoing reasons, the Defendants' Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration, or, in the Alternative, Motion to Dismiss the Complaint is GRANTED IN PART AND DENIED IN PART.  Specifically, the Defendants' request for an order compelling arbitration and staying the proceedings is GRANTED.  Their request for dismissal is DENIED AS MOOT.

SO ORDERED this 18th day of October, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[4]See also Merrill Lynch Pierce, Fenner & Smith Inc. v. Coors, 357 F. Supp. 2d 1277, 1279-80 (D. Colo. 2004) (holding that non-signatory to arbitration agreement may seek an order compelling arbitration when the claims are based on the same factual allegations and the claims against the non-signatories are inextricably intertwined with the arbitrable claims); Roe v. Gray, 165 F. Supp. 2d 1164, 1174-75 (D. Colo. 2001) (same).